**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **WILLIE WILLIAMS, #A65081** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:20-cv-00469-MAB** |
| | ) | |
| **PATRICIA B. STEWART,** | ) | |
| **ROB JEFFREY,** | ) | |
| **ALEX JONES,** | ) | |
| **FRANK LAWRENCE,** | ) | |
| **DR. SUTTERER,** | ) | |
| **J. CLENDENIN,** | ) | |
| **LT. OOUTTIS,** | ) | |
| **SGT. HARRIS,** | ) | |
| **C/O COX,** | ) | |
| **R.N. BURNS, and** | ) | |
| **C/O MARTINEZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# <u>MEMORANDUM AND ORDER</u>

**BEATTY, Magistrate Judge:**

Plaintiff Willie Williams, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), filed this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights.[1] Following preliminary review by the undersigned pursuant to 28 U.S.C. § 1915A, Plaintiff's Complaint (Doc. 1) was dismissed for violations of Federal Rule of Civil

---

[1] The Court has jurisdiction in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge and the Defendants' limited consent to the exercise of Magistrate Judge jurisdiction, as set forth in the Memorandum of Understanding between the Illinois Department of Corrections, Wexford Health Sources, and this Court.

Procedure 8 (Doc. 9, p. 6). He was granted leave to file a First Amended Complaint on or before August 3, 2020. (*Id.*).

Plaintiff filed a First Amended Complaint on July 21, 2020 (Doc. 11) and another document titled First Amended Complaint on July 27, 2020, which will be referred to as the Second Amended Complaint. The Court docketed a Motion for Leave to File Second Amended Complaint with the Second Amended Complaint. (Doc. 12). Plaintiff filed four additional documents titled First Amended Complaint on September 3, 2020 (Doc. 20), September 8, 2020 (Docs. 21, 21-1), and September 14, 2020 (Doc. 23). A review of these documents shows that the filings are not amended complaints and instead, are responses to an Order issued by this Court on August 24, 2020 (Doc. 17) pertaining to the two First Amended Complaints filed by Plaintiff. To the extent the documents are an attempt to supplement the previously filed amended complaints, the requests are **DENIED**. The Court does not accept piecemeal amendments or supplements to a complaint or an amended complaint. Further, the filings do not comply with Federal Rule of Civil Procedure 15 or SDIL-LR 15.1.

Plaintiff filed the First Amended Complaint and the Second Amended Complaint within the time granted him to file an amended complaint. The Second Amended Complaint replaces all preceding complaints and renders them void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). Accordingly, the Motion for Leave to File Second Amended Complaint (Doc. 12) is **GRANTED**.

The Second Amended Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter

2

out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). Also before the Court is Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Docs. 2, 13).

## THE SECOND AMENDED COMPLAINT

Plaintiff alleges the following in the Second Amended Complaint: Plaintiff is blind in one eye. In April 2020, his blind eye became bloody, cloudy, and infected. Every day he gave the nurses a request slip to see Dr. Sutterer, but he did not receive a response to his requests for medical care. He wrote letters to Menard Wardens Alex Jones and Frank Lawrence and filed multiple grievances about the denial of medical care for his eye, but they took no action. IDOC Director Rob Jeffrey was made aware of the denial of medical care by the filing of grievances with the Administrative Review Board. Director Jeffrey did not take any action except to "rubber stamp" the grievances. Additionally, Plaintiff's family members and pen pals wrote letters to Director Jeffrey about Plaintiff's situation.

When Plaintiff has a grievance to file, he notifies C/O Martinez and asks him to bring the grievance box. He also uses the grievance box to send letters to Warden Alex Jones, Warden Frank Lawrence, and Counselor Clendenin about other issues. He has learned from another correctional officer that his grievance are removed from the box by the Major. C/O Martinez knew his efforts to obtain medical care were being sabotaged. C/O Martinez knew he needed medical care for his eye and participated in the scheme to thwart his efforts to bring the matter to the attention of officials who could rectify the

situation. He also told Lt. Oouttis he needed medical care and he responded by giving him the middle finger, telling him to "shut the f*** up," and walking away.

Plaintiff spoke with, and wrote to, Counselor Clendenin but she undermined his ability to grieve his medical issues and receive medical care. Some of his grievances had the Warden's signature stating it was not an emergency and he should go through the standard grievance procedure. He has not had a favorable result on his grievances. They are covering for one another to deny and sabotage his efforts to grieve all of his complaints, medical or otherwise.

Plaintiff has been threatened by C/O Cox on a daily basis. He contacted Sgt. Harris about C/O Cox's harassment. On one occasion, C/O Cox stood by and listened to Plaintiff discuss his personal business with Counselor Clendenin. Plaintiff told Clendenin to never speak to him about anything when someone was listening, especially not in front of C/O Cox. Counselor Clendenin walked away. After that day, correctional officers, including C/O Cox, would come into his cell and threaten him. When he submitted grievances, they would not be filed and his letters to Director Jeffrey would not be mailed out.

Plaintiff was told by a nurse that he was on the sick call list for his eye, but C/O Cox told him he was not on the list. When he notified Sgt. Harris, he was told to go through the chain of command to Lt. Oouttis. C/O Cox, Sgt. Harris, and Lt. Oouttis came to his cell with the sole purpose to intimidate or provoke him. He has complained to Lt. Oouttis and Sgt. Harris about C/O Cox threatening him, denying him medical health

4

care, and stealing his grievances and letters, but they have not taken any action to assist Plaintiff.

On April 18, 2020, Nurse Burns came to his cell and saw his infected eye. He told her that the second shift nurse told him that he would be on sick call list that day. Nurse Burns told him he was not. He explained that his eye had been hurting and infected since April 13, 2020 and he had given every nurse on three shifts a request for medical attention. Nurse Burns then asked him to come out of his cell and told him a doctor was in sick call to see him. He knows she was lying because Dr. Sutter is in a wheelchair and he could not be upstairs in a cell house sick call room. He told Nurse Burns he was not coming out of his cell because he feared for his life. He also told Lt. Oouttis he feared for his life because C/O Cox and two other correctional officers had threatened him. Lt. Oouttis only wanted to know if he was going to sign a medical refusal slip. Nurse Burns told him he would never be given any medical attention again. Nurse Burns, Lt. Ooutis, C/O Cox, and Sgt. Harris attempted to intimidate him into signing the slip. Nurse Burns did not offer Plaintiff any medical care and instead, signed a medical refusal slip along with Lt. Ooutis, C/O Cox, and Sgt. Harris, which resulted in a denial of medical care.

In May 2020, Plaintiff left his eyeglasses in the health care unit to be repaired. He thought a little glue would fix them. He waited over 60 days and then asked Nurse McKesson about them. Nurse McKesson was unable to locate his eyeglasses and told Plaintiff that he left a note about them for the health care unit supervisor and Dr. Sutterer. Plaintiff has not heard from either one, and has not received his eyeglasses.

Plaintiff has not received medical attention for his eye and his eyeglasses have disappeared. No nurse, doctor, or warden has intervened. The actions of Defendants in denying Plaintiff medical care are retaliation for his complaints, grievances, and lawsuits against IDOC staff.

Patricia Stewart is the in-house notary. She stopped making rounds due to the virus. She will only provide notary services if an inmate submits his document through the prison mail system. Both Wardens are permitting this. This process causes Plaintiff stress because he does not know when his legal documents will be returned. Also, Stewart had an inmate take his legal materials and make copies that he did not ask for and he was charged for it. He filed a grievance about the charge and Jeffrey "rubber stamped" the denial.

## IFP MOTION

Before screening the Second Amended Complaint, the Court must address Plaintiff's request to proceed IFP (Docs. 2, 13). Under 28 U.S.C. § 1915, a federal court may permit a prisoner who is indigent to bring a "suit, action or proceeding, civil or criminal," without prepayment of fees upon presentation of an affidavit stating the prisoner's assets together with "the nature of the action . . . and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). In the case of civil actions, a prisoner's affidavit of indigence must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . , obtained from the appropriate official of each

prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). In this case, Plaintiff has tendered an affidavit of indigence that is sufficient as to form.

Plaintiff is nevertheless barred from proceeding IFP under 28 U.S.C. § 1915(g). Section 1915(g) prohibits a prisoner from bringing a civil action or appealing a civil judgment IFP, "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g). Public records reveal that Plaintiff incurred four "strikes" within the meaning of 28 U.S.C. § 1915(g) before filing this action and is therefore subject to the three-strikes bar. *See Williams v. Mitchell, et al*, Case No. 93-cv-741-WLB (S.D. Ill., dismissed Oct. 6, 1994 as frivolous); *Williams v. Peters, et al*, Case No. 94-cv-365-JPG (S.D. Ill., dismissed March 8, 1995 as frivolous); *Williams v. Inman, et al*, Case No. 94-cv-669-WDS (S.D. Ill., dismissed Feb. 27, 1995 as frivolous); and *Williams v. Reese, et al*, Case No. 96-cv-734-WLB (S.D. Ill., dismissed March 18, 1997 as frivolous).[2]  Because Plaintiff has four "strikes" for purposes of § 1915(g), he may not proceed IFP unless he is under imminent danger of serious physical injury.

The United States Court of Appeals for the Seventh Circuit has explained that "imminent danger" within the meaning of 28 U.S.C. § 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d

---

[2] Plaintiff filed the 1993 and 1994 cases under his full name of "Willie Mitchell Williams" and the 1996 case under the name of "Willie M. Williams." Each case reflects his prisoner number of A56081.

328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). In general, courts "deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous." *Ciarpaglini*, 352 F.3d at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). Additionally, "[a]llegations of past harm do not suffice" to show imminent danger; rather, "the harm must be imminent or occurring at the time the complaint is filed," and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed IFP." *Id.* at 330 (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

Here, Plaintiff is alleging an ongoing denial of medical care with regard to an infected eye. Plaintiff's claim is sufficient at screening to invoke the "imminent danger" exception to the "three strikes" rule. However, if his claim is challenged by the defense, or appears unfounded to the Court at a later date, it must be supported by facts presented in affidavits or, if appropriate, hearings. *See Sanders v. Melvin*, 873 F.3d 957, 961 (7th Cir. 2017). If Plaintiff's allegations of imminent physical harm are untrue, then he must pay the whole filing fee promptly. *Id.* And if it turns out that he has lied in an effort to manipulate the Court, the case may be dismissed with prejudice as a sanction even if Plaintiff pays the full $400 filing fee. *Id.* Furthermore, the Court may also fine him, sanction him with a filing bar that does not include an imminent-danger exception for civil suits and refer him for prosecution for perjury. *Lindsey v. Hoem*, 799 F.App'x 410 (7th Cir. 2020) (citing *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995).

Plaintiff may not proceed on his claims that do not allege or seek to prevent an imminent danger of serious physical injury. "[The three-strikes] provision is intended to

prevent serial filers of frivolous litigation [ ] from pursuing claims unrelated to the prevention of serious physical injury."   *See Luedtke v. Bertrand*, 32 F.Supp.2d 1074, 1077 (E.D. Wis. 1999). "To allow a prisoner to get around this gate-keeping mechanism by joining an allegation of imminent injury with a parade of other claims having nothing to do with an imminent danger to a prisoner's physical well-being would quickly eviscerate the three-strike rule and frustrate the clear objectives of the United States Congress." *Id.*; *see also Hayes v. Swiney*, No. 18-CV-1387-MJR, 2018 WL 3819103, at *3 (S.D. Ill. Aug. 10, 2018) (granting IFP to prisoner subject to three strikes rule but only allowing claims to proceed that were associated with Court's imminent danger finding). Accordingly, Plaintiff is eligible to proceed IFP under 28 U.S.C. § 1915(g), but only with regard to his claims of imminent danger of serious physical injury related to the denial of medical care.

Accordingly, Plaintiff's IFP Motion (Docs. 2, 13) will be **GRANTED**. The initial partial filing fee and payment scheme will be set forth in a separate order.

## 1915A REVIEW

### *Preliminary dismissals*

Plaintiff refers to individuals in his statement of claim who are not named as defendants. Federal Rule of Civil Procedure 10(a) requires the names of all parties to be included in the case caption. Claims against any individuals not identified as defendants in the case caption are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (holding *pro se* Complaint failed to state a claim against individual mentioned in body of Complaint but not specified in the caption).

9

Plaintiff's claims related to the notary services and unauthorized copy charges having nothing to do with an imminent danger to a Plaintiff's well-being. Further, the claims likely violate the rules of joinder. Federal Rule of Civil Procedure 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *Id.* Federal Rule of Civil Procedure 21 grants district courts broad discretion when deciding whether to sever claims or to dismiss improperly joined defendants. *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011). For these reasons, those claims and Defendant Stewart will be dismissed.

### *Claims*

Based on the allegations in the Second Amended Complaint, the Court finds it convenient to designate the following claims in this *pro se* action:

Count 1:    Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Sutterer, Burns, Clendenin, Cox, Harris, Oouttis, Martinez, Jones, Lawrence, and Jeffreys for the denial of medical treatment for Plaintiff's eye.

Count 2:    First and/or Fourteenth Amendment claim against Jeffreys, Jones, Lawrence, Clendenin, Martinez for mishandling and/or denial of his grievances.

Count 3:    First Amendment claim against Dr. Sutterer, Burns, Clendenin, Cox, Harris, Oouttis, Martinez, Jones, Lawrence, and Jeffreys for retaliation.

Count 4:      Eighth Amendment claim against Cox for threats and/or harassment.

Count 5:      First Amendment claim against Martinez and Cox for interference with Plaintiff's mail.

Count 6:      Fourteenth Amendment property deprivation claim against Dr. Sutterer for failing to return Plaintiff's eyeglasses.

Count 7:      Conspiracy claim against Burns, Cox, Oouttis, and Harris for conspiring to assault Plaintiff and deny him medical care.

Count 8:      State law medical negligence claim against Dr. Sutterer for the denial of medical treatment for Plaintiff's eye and denying him eyeglasses.

Any other claim that is mentioned in the Second Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

### *Count 1*

Plaintiff alleges deliberate indifference on the part of various medical and non-medical prison officials for the denial of medical treatment for his eye. Prison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state a claim, a prisoner must allege facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* "[D]eliberate indifference may be found where an official knows about unconstitutional

conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). A prisoner states a plausible deliberate indifference claim against prison officials that allegedly obtained actual knowledge of his objectively serious medical condition and inadequate medical care through his coherent and highly detailed grievances and failed to exercise their authority to intervene to rectify the situation. *Id.* The allegations in the Complaint are sufficient to proceed on a deliberate indifference claim against Dr. Sutterer, Burns, Clendenin, Cox, Harris, Oouttis, Martinez, Jones, Lawrence, and Jeffreys.

### Count 2

Plaintiff alleges Jeffreys, Jones, Lawrence, Clendenin, and Martinez mishandled and/or improperly denied his grievances and associates this claim with the denial of medical care. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). As such, the alleged mishandling or denial of a grievance does not state a claim under the First or Fourteenth Amendments. *Id.*; *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." Therefore, Count 2 will be dismissed.

### Count 3

Plaintiff alleges he was denied medical treatment, threatened, harassed, and his grievances mishandled and/or denied in retaliation for his complaints and lawsuits against prison officials. Prison officials may not retaliate against inmates for filing

12

grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012). To state a retaliation claim, a plaintiff must allege that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). At this stage, Plaintiff states a viable claim for retaliation against Dr. Sutterer, Burns, Clendenin, Cox, Harris, Oouttis, Martinez, Jones, Lawrence, and Jeffreys.

### Count 4

Plaintiff alleges interference with his outgoing mail and associates this claim with the denial of medical care. Inmates have a First Amendment right both to send and receive mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Although the First Amendment "applies to communications between an inmate and an outsider," a valid claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) ("Allegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded upon the First Amendment.").

Plaintiff's allegations regarding the interference with his mail are unclear. He alleges he gave grievances and letters to C/O Martinez to go in the grievance box but the Major removed them. At another point, he alleges he advised prison officials that Cox has stolen his grievances and letters. His allegations are not sufficient to indicate "a

continuing pattern or repeated occurrences" of mail interference by any defendant and, therefore, Count 4 will be dismissed.

### Count 5

Plaintiff alleges threats and harassment by C/O Cox and associates this claim with the denial of medical care. In general, allegations of verbal abuse and threats are insufficient grounds for relief under Section 1983. *See Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) ("[M]ost verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment."); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). However, verbal harassment that causes psychological pain may amount to cruel punishment under the Eighth Amendment. *Beal*, 803 F.3d at 357-58. Plaintiff does not describe what Defendants said or did that constitute a "threat."  He does not describe psychological pain or the type of verbal harassment sufficient to constitute cruel punishment. Count 5 will, therefore, be dismissed without prejudice.

### Count 6

Plaintiff alleges he submitted his eyeglasses for repair several months ago and despite repeated requests for the return of his eyeglasses, his property has not been returned to him. To state a property loss claim under the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property without due process of law. If the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984) (availability of damages remedy in state claims court

is an adequate, post-deprivation remedy). In that vein, the Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 Ill. Comp. Stat. 505/8 (1995). Thus, Plaintiff must pursue any claims for the loss of his property in the Illinois Court of Claims, and Count 6 will be dismissed with prejudice from this action.

### Count 7

Plaintiff alleges Burns, Cox, Oouttis, and Harris conspired to deny him medical care. For a civil conspiracy claim in a section 1983 claim, plaintiff must allege that the defendants reached an agreement to deprive him of his constitutional rights, and overt acts taken in furtherance of the same actually deprived him of those rights. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Plaintiff's allegations are sufficient at the screening stage to proceed on a conspiracy claim against Burns, Cox, Oouttis, and Harris.

### Count 8

Plaintiff seeks to bring a state law medical negligence claim against Dr. Sutterer. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). Plaintiff's allegations of medical negligence derive from the same facts as his Eighth Amendment deliberate indifference claim, so this Court will exercise supplemental jurisdiction over the claim.

15

An Illinois medical negligence claim requires the plaintiff to show: (1) the applicable standard of care; (2) the defendant breached the standard of care and was negligent; and (3) and the breach was a proximate cause of the plaintiff's injury. *Chambers v. Igram*, 858 F.2d 351, 355 (7th Cir. 1988). Plaintiff's allegations are sufficient to proceed on a medical negligence claim against Dr. Sutterer.[3]

## DISPOSITION

The Motion for Leave to File Second Amended Complaint (Doc. 12) is **GRANTED**. The Clerk of Court is **DIRECTED** to **FILE** the "First Amended Complaint" submitted on July 27, 2020 as the **SECOND AMENDED COMPLAINT**.

Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Docs. 2, 13) is **GRANTED**. The initial partial filing fee and payment scheme will be set forth in a separate order.

Defendant Patricia B. Stewart is **DISMISSED** without prejudice and the Clerk of Court is **DIRECTED** to **TERMINATE** her as a party.

Counts 1 and 3 will proceed against Dr. Sutterer, Burns, Clendenin, Cox, Harris, Oouttis, Martinez, Jones, Lawrence, and Jeffreys. Count 7 will proceed against Burns, Cox, Oouttis, and Harris. Count 8 will proceed against Dr. Sutterer. Counts 2, 4, 5, and 6

---

[3] The Court notes that Plaintiff has not provided the affidavit and medical report required under Illinois state law, *i.e.*, 735 ILCS § 5/2-622. If he intends to proceed with this claim, Plaintiff must file an affidavit stating that "there is a reasonable and meritorious cause" for litigation of the medical malpractice claim, along with a physician's report in support of the affidavit. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019). His failure to do so is not dispositive of his claim at this point. *Id.* However, Plaintiff must comply with the requirements set forth in 735 ILCS § 5/2-622 before summary judgment on the merits of the case.

are **DISMISSED** without prejudice.

The Clerk of Court shall prepare for Dr. Sutterer, Burns, Clendenin, Cox, Harris, Oouttis, Martinez, Jones, Lawrence, and Jeffreys: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment

includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 2, 2020**

**/s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**

**<u>Notice to Plaintiff</u>**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Second Amended Complaint. After service has been achieved, Defendants will enter an appearance and file Answers to your Second Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.