IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-cv-00469-MAB |
| | ) |
| RYAN SUTTERER, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motions for summary judgment brought by Defendant Ryan Sutterer (Doc. 75) and Defendants Latika Burns, Jennifer Cowan, Jessi Cox, Patrick Harris, Rob Jeffreys, Alex Jones, Frank Lawrence, Andrew Martinez, and William Qualls ("IDOC Defendants") (Doc. 81). Defendants request summary judgment based on Plaintiff Willie William's failure to exhaust administrative remedies before filing suit. For the reasons set forth herein, the Court finds that Plaintiff failed to exhaust his available administrative remedies before bringing this action, and the motions for summary judgment are granted.

### INTRODUCTION

On May 19, 2020, Plaintiff Willie Williams, an inmate with the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 for purported deprivations of his constitutional rights at Lawrence Correctional Center and Menard Correctional Center (Doc. 1). Following a threshold review of the complaint pursuant to

28 U.S.C. § 1915A, the "Lawrence claims" were severed into a separate action and only the "Menard claims" remained in this case (Doc. 9). However, the Menard claims were dismissed for violations of Federal Rule of Civil Procedure 8, and Plaintiff was granted leave to amend his complaint (Doc. 9).

Plaintiff subsequently filed his First Amended Complaint on July 21, 2020 (Doc. 11), and another document titled First Amended Complaint on July 27, 2020, which has been construed as the Second Amended Complaint (Doc. 12; *see* Docs. 27, 29). In short, Plaintiff alleged that he was denied medical care for his infected eye and his complaints about the matter were ignored. Although Plaintiff has accumulated at least four "strikes" for filing frivolous lawsuits and is prohibited from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g), the Court permitted him to proceed on the following claims after finding the imminent danger exception applied:

> **Count 1**: Eighth Amendment claim for deliberate indifference to serious medical needs against Defendants Burns, Cowan, Cox, Harris, Jeffreys, Jones, Lawrence, Martinez, Qualls, and Sutterer for the denial of medical treatment for Plaintiff's eye.
>
> **Count 3**: First Amendment claim for retaliation against Defendants Burns, Cowan, Cox, Harris, Jeffreys, Jones, Lawrence, Martinez, Qualls, and Sutterer.
>
> **Count 8**: State law medical negligence claim against Dr. Sutterer for the denial of medical treatment for Plaintiff's eye and denying him eyeglasses.

(Doc. 27).

Defendant Sutterer filed his motion for summary judgment on the issue of exhaustion on March 29, 2021 (Docs. 75, 76). And the IDOC Defendants filed their motion on April 12, 2021 (Docs. 81, 82). Defendants argue that Plaintiff failed to fully exhaust any

of the relevant grievances, and some Defendants also argue that none of the relevant grievances name, describe, or identify them in any way (Docs. 76, 82). Plaintiff filed a "response" in opposition to the motions for summary judgment on April 30, 2021 (Doc. 86),[1] however, his brief does not actually contain any facts or arguments relevant to the issue of exhaustion, nor does he dispute the facts asserted by Defendants in their motions.

## FACTUAL BACKGROUND

In the Second Amended Complaint, Plaintiff alleges that he has glaucoma and is blind in his right eye (Doc. 29, pp. 7, 15-16). In April 2020, his right eye became bloody, cloudy, and infected (*Id.* at pp. 19-20). He made repeated requests to see Defendant Sutterer for medical treatment for the infection, but to no avail (*Id.* at pp. 8-20). Plaintiff further alleges that in May 2020 he submitted his eyeglasses to the health care unit for repair and, despite repeated requests for the return of his eyeglasses, his property has not been returned to him (*Id.* at pp. 6-7, 15-16, 20).

In support of their motions for summary judgment, Defendants submitted a number of documents, including the Menard Correctional Center Offender Orientation Manual (Docs. 76-3, 82-2), which explains the grievance process and procedures; Plaintiff's grievance records from the Administrative Review Board (Docs. 76-4, 76-5, 76-6, 82-3); his grievance records on file at Menard (Doc. 76-8, 76-9, 76-10, 82-4); a grievance log maintained at the facility (Doc. 76-7; Doc. 82-5); and Plaintiff's cumulative counseling summary (Doc. 76-2; Doc. 82-1). According to these records, Plaintiff submitted the

---

[1] A duplicate response was filed that same day at Doc. 90.

following relevant grievances prior to submitting his Second Amended Complaint on

July 27, 2020:

- **Grievance #250-4-20**: The grievance log and cumulative counseling summary show Plaintiff submitted an emergency grievance in April 2020 regarding "bloody, cloudy eye denied sick call" (Doc. 76-2, p. 5; Doc. 76-7, p. 167). No copies of this grievance were contained in Plaintiff's grievance records from the ARB or Menard, nor was a copy of the grievance attached to Plaintiff's complaint (*see* Doc. 29). The grievance was received by the warden on April 20, 2020 and deemed a non-emergency. It was returned to Plaintiff two days later. There is no indication that Plaintiff ever resubmitted this grievance through the standard grievance procedure (*see* Doc. 76-7, p. 167).

- **Grievance #224-5-20**: Plaintiff filed an emergency grievance dated May 28, 2020 in which he complained, in short, that Officer Cox was threatening him, had denied him medical care for his eye infection, and was working with other correctional officers and medical staff to have him assaulted. Plaintiff also said that his complaints to Warden Jones and Warden Lawrence about Officer Cox have been ignored (Doc. 76-10, pp. 70–72; *see also* Doc. 76-2, p. 5; Doc. 76-7, p. 171). This grievance was received by the warden on May 29th and deemed a non-emergency. It was returned to Plaintiff on June 2nd. Plaintiff then submitted the grievance to his counselor and received a response on June 4, 2020. There is no indication that Plaintiff ever sent this grievance on to the grievance officer (*see* Doc. 76-2, p. 5; Doc. 76-7, p. 171).

  Months later, Plaintiff sent a different version of a grievance dated May 28, 2020 regarding Officer Cox to the ARB, where it was received, along with corresponding letters and unnotarized affidavits, on September 2, 2020 (Doc. 76-4, pp. 70–76). The ARB responded on September 10, 2020, indicating that the grievance was being returned without review because of Plaintiff's "overall failure" to meet the requirements of the grievance procedure (*Id.*).

- **Grievance #64-7-20**: Plaintiff submitted an emergency grievance dated July 1, 2020 in which he complained that his eyeglasses were not returned to him after he had left them with the health care unit for repair a month prior (Doc. 76-10, pp. 68–69; *see also* Doc. 76-2, p. 4; Doc. 76-7, p. 175). The warden received the grievance on July 6th, determined it was not an emergency, and instructed Plaintiff that the grievance should be submitted according to the standard grievance procedure. The grievance with the warden's

response was returned to Plaintiff on July 9th. Plaintiff then submitted the grievance to his counselor, who sent him a response on July 20th that included a memorandum from Dr. Sutterer. There is no indication that Plaintiff ever sent this grievance to the grievance officer (*see* Doc. 76-7, p. 175; Doc. 76-2, p. 4).

- **Grievance #202-8-20**: The grievance log and cumulative counseling summary indicate that Plaintiff filed an emergency grievance dated August 13, 2020 regarding "eyeglasses" (Doc. 76-7, p. 182; Doc. 76-2, p. 4). No copies of this grievance were contained in Plaintiff's grievance records from Menard or the ARB, nor was a copy of the grievance included with Plaintiff's complaint (*see* Doc. 29). The warden determined the grievance was not an emergency and it was returned to Plaintiff on August 19th with instructions that the grievance should be resubmitted according to the standard grievance procedure. There is no indication that Plaintiff resubmitted this grievance to his counselor (*see* Doc. 76-7, p. 182; Doc. 76-2, p. 4).

## LEGAL STANDARDS

**A.    Summary Judgment**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing there is a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all

reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Generally, the courts cannot resolve factual disputes on a motion for summary judgment. *See, e.g.*, *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). On the issue of exhaustion, the defendants have the burden of proof. *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *Westerfer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005). Where there are no material factual disputes, an evidentiary hearing is not necessary. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question"). Here, there is no material facts in dispute and no hearing is required because, in his response, Plaintiff did not assert any of his own facts or disagree with any of the facts asserted by Defendants (*see* Doc. 86).

**B.     Administrative Exhaustion**

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available

administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 663 F.3d at 903. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Proper exhaustion is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *McNeil v. United States*, 508 U.S. 106, 111, 113 (1993) (Courts are "not free to rewrite the statutory text" when Congress has strictly "bar[red] claimants from bringing suit in federal court until they have exhausted their administrative remedies."). This circuit requires strict compliance with the exhaustion rules. *Doe v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In order to properly exhaust his administrative remedies, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Moreover, to properly exhaust administrative remedies, an inmate must take all steps through all levels required by the prison's grievance system, including the appeal of denied grievances, that are available to him prior to filing suit in federal court. *Chambers v. Sood*, 956 F.3d 979, 981 (7th Cir. 2020); *see also Woodford*, 548 U.S. at 90. Unless a prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred. *Pozo*, 286 F.3d at 1023.

As an IDOC inmate at Menard, Plaintiff is subject to the PLRA's exhaustion requirement. In order to exhaust his administrative remedies, he was required to use the IDOC's grievance procedures described in 20 Ill. Admin. Code § 504.800, *et seq.* (2017),

along with institution-specific supplemental procedures. In its normal course at Menard, the grievance process involves three steps. First, an inmate must submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to their institutional counselor. *Id*. at § 504.810(a).[2] If the inmate is unable to resolve the grievance through their counselor, the inmate may submit the written grievance to the grievance officer who must render a written recommendation to the warden "within two months of receipt . . . when reasonably feasible under the circumstances." *Id*. at § 504.830(e). The warden then reviews the findings and then advises the inmate of their decision on the resolution of the matter. *Id*. An inmate may appeal the warden's decision in writing to the Administrative Review Board within thirty days after the date of the warden's decision, and the Director renders a final decision, in consideration of the ARB's findings and recommendations on the appealed grievance, "within six months . . . when reasonably feasible under the circumstances." *Id*. at § 504.850(a) and (e).

Alternatively, an inmate may request that a grievance be handled as an emergency by submitting the request directly to the warden. *Id*. at § 504.840. If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is processed on an expedited basis. *Id*. On the other hand, if the warden determines that the grievance does not involve an emergency, the inmate is notified in writing that he or she "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id*.

---

[2] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

<u>ANALYSIS</u>

As previously noted, Plaintiff failed to respond to the merits of the motion for summary judgment on the issue of exhaustion. As a self-represented litigant, Plaintiff received notice of the consequences of failing to respond to the motion for summary judgment (Doc. 77). The Rule 56(e) Notice advises Plaintiff that "[i]f a party fails . . . to properly address another party's assertion of fact" the Court may "consider the fact undisputed for purposes of the motion" (*Id.*). As such, the Court deems the facts presented by Defendant Sutterer on the issue of exhaustion undisputed. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995) (noting that a failure to respond constitutes an admission that there are no undisputed material facts).

The Court has reviewed the grievance records submitted in connection with the pending motion for summary judgment and considered the arguments presented. This review shows that there are four grievances that potentially cover Plaintiff's claims against Defendant regarding Plaintiff's injuries: the April 2020 grievance #250-4-20; the May 2020 grievance #224-5-20; the July 2020 grievance #64-7-20; and the August 2020 grievance #202-8-20.

As an initial matter, the Court notes that Plaintiff filed his original complaint on May 19, 2020 but did not state any viable claims. However, he was permitted to pursue claims stated in his Second Amended Complaint, which was submitted on July 27, 2020 (Doc. 12). Defendants appear to take the position that Plaintiff had to fully exhaust his administrative remedies as to them by the time he filed his second amended complaint,

not the original complaint (*see* Docs. 76, 82). For example, Defendants do not distinguish which allegations were included in the original complaint and which were added somewhere thereafter (*see* Docs. 76, 82). And they also discuss grievances that were submitted after the original complaint was filed, as opposed to summarily arguing these grievances cannot serve to exhaust Plaintiff's claims because they were not submitted until after Plaintiff filed suit (*see* Docs. 76, 82). Consequently, the Court's analysis will focus on whether Plaintiff fully exhausted his administrative remedies prior to submitting his second amended complaint on July 27, 2020.

One of the four grievances—grievance #202-8-20 dated August 13, 2020—was not submitted until after Plaintiff filed his Second Amended Complaint. Therefore, this grievance cannot possibly be used to exhaust as to any of the Defendants. *E.g., Chambers v. Sood*, 956 F.3d 979, 981 (7th Cir. 2020) ("The [PLRA] requires *pre-suit* exhaustion; pursuing administrative remedies while litigation is underway does not suffice."). Furthermore, there is no evidence that Plaintiff took this grievance, or any of the other three, through every step of the grievance process. All four grievances were submitted by Plaintiff as emergency grievances to the warden. In each case, the warden reviewed the grievance and determined it was a non-emergency and Plaintiff was advised that he should resubmit his grievance through the standard grievance process. Of the four grievances, only two of the grievances—grievance #224-5-20 dated May 28, 2020 and grievance #64-7-20, dated July 1, 2020—were subsequently resubmitted by Plaintiff through the standard process. In those two instances, Defendants argue, without contradiction, that Plaintiff took no further action after receiving the grievances back

from his counselor. Plaintiff failed to pursue the grievances to the next level of institutional review with the grievance officer and the warden.

In sum, the undisputed facts reveal that Plaintiff filed this lawsuit before he exhausted all of his available administrative remedies. Defendants are therefore entitled to summary judgment on the issue of exhaustion and this case must be dismissed without prejudice. The dismissal, in turn, renders Plaintiff's motion for a preliminary injunction (Doc. 98) and his "Motion to Clarify," which describes a new perceived threat to his safety (Doc. 106), moot.

## Conclusion

The motions for summary judgment on the issue of exhaustion filed by Defendant Ryan Sutterer (Doc. 75) and Defendants Latika Burns, Jennifer Cowan, Jessi Cox, Patrick Harris, Rob Jeffreys, Alex Jones, Frank Lawrence, Andrew Martinez, and William Qualls (Doc. 81) are **GRANTED**. This case is dismissed with prejudice for failure to exhaust. Plaintiff's motion for a preliminary injunction (Doc. 98) and "Motion to Clarify" (Doc. 106) are **MOOT**. The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: October 5, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**